1  MARTIN L. FINEMAN, California State Bar No. 104413
   DAVID WRIGHT TREMAINE LLP
2  505 Montgomery St., Suite 800
   San Francisco, California 94111-6533
3  Phone: (415) 276-6500
   Fax: (415) 276-6599
4  E-mail: martinfineman@dwt.com

5  DAVID J. SHEIKH *(Pro Hac Vice* pending*)*
   GREGORY P. CASIMER *(Pro Hac Vice* pending*)*
6  DAVID J. MAHALEK *(Pro Hac Vice* pending*)*
   NIRO, SCAVONE, HALLER & NIRO
7  181 W. Madison St., Suite 4600
   Chicago, Illinois 60602
8  Phone: (312) 236-0733
   Fax: (312) 236-3137
9  E-mail: sheikh@nshn.com
   E-mail: casimer@nshn.com
10 E-mail: mahalek@nshn.com

11 *Attorneys for Plaintiff*
   **ThinkVillage LLC**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THINKVILLAGE-KIWI, LLC, | Case No. |
| Plaintiff, | |
| v. | **THINKVILLAGE-KIWI LLC'S COMPLAINT AND DEMAND FOR JURY TRIAL** |
| ADOBE SYSTEMS, INC, and ADOBE MACROMEDIA SOFTWARE LLC, | |
| Defendants. | |

Plaintiff ThinkVillage-Kiwi, LLC ("TVK") complains of Defendants Adobe Systems, Inc. ("Adobe") and Adobe Macromedia Software LLC ("Adobe Macromedia") as follows:

1. TVK is a Colorado limited liability company with its principal place of business at 10437 Goosehaven Drive, Lafayette, Colorado 80026.

2. Adobe is a Delaware corporation with its principal place of business at 345 Park Avenue, San Jose, California 95110, which is within this judicial district.

1

THINKVILLAGE-KIWI v. ADOBE SYSTEMS, INC.
DWT 11741523v1 0087744-000001                                                                                    COMPLAINT

3.    Adobe Macromedia is a California limited liability company with its principal place of business at 601 Townsend Street, San Francisco, California 94103, which is within this judicial district.

4.    In performing the acts described herein, the defendants were each the agent of the other.

## JURISDICTION

5.    This is an action for misappropriation of trade secrets under Cal. Civ. Code §§ 3426, *et seq.*; for unfair competition under 15 U.S.C. §§ 1051, *et. seq.* (the "Lanham Act"); for unfair competition under Cal. Bus. & Prof. Code §§ 17200, *et seq.* and under the common law of California; and for breach of contract and breach of fiduciary duty.

6.    This Court has jurisdiction over the subject matter of TVK's claims based on the Lanham Act under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1332. This Court has jurisdiction over the subject matter of TVK's claims for unfair competition, misappropriation of trade secrets, breach of contract and breach of fiduciary duty under 28 U.S.C. §§ 1332 and 1367.

7.    This Court has personal jurisdiction over the parties.

## VENUE

8.    Venue in this court is proper under 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims occurred in this judicial district, and Defendants' contacts in this judicial district are sufficient to subject them to personal jurisdiction in this judicial district, if this judicial district were a separate state.

## GENERAL ALLEGATIONS AND BACKGOUND

9.    TVK owns all right, title and interest, including the rights to enforce and to recover past damages for the infringement, misappropriation and/or breach of certain assets, intellectual properties, trade secrets, contracts and proprietary and other rights relating to developer tools and authoring environments for mobile device applications and content that run on Adobe's Flash® Lite™ player and other platforms. TVK's trade secrets and intellectual properties, originally promoted under the trade name "MyMCOM," were conceived and developed by Kiwi International Ltd. ("Kiwi") and its founder and principal, Donavan Poulin ("Mr. Poulin"). TVK acquired its right,

1  title and interest in these assets, intellectual properties, trade secrets, contracts and proprietary and
2  other rights by assignment from Kiwi and Mr. Poulin.

3       10.    Adobe is the current owner of the Adobe Flash Player, the Adobe Flash Lite player,
4  and related multimedia products (the "Adobe Flash Products").

5       11.    The Adobe Flash Player is a multimedia and software application player with various
6  commercial uses in online and desktop environments. The Adobe Flash Lite Player is the equivalent
7  of the Adobe Flash Player, but is designed to operate and run applications on cell phones and similar
8  mobile devices.

9       12.    The Adobe Flash Products were marketed and sold by Macromedia, Inc.
10  ("Macromedia") until December, 2005 when Macromedia was acquired by Adobe. As part of this
11  acquisition, Adobe merged a wholly owned subsidiary with and into Macromedia with Macromedia
12  remaining as the survivor. Macromedia then converted into a limited liability company, changing its
13  name to Adobe Macromedia Software LLC, which operates as a wholly owned subsidiary of Adobe.

14       13.    Since at least 2000, Mr. Poulin has been a creator of commercial applications, front
15  end content and developer tools for the Flash and Flash Lite runtime environments.

16       14.    Through the operation of his company, Kiwi, Mr. Poulin conceived MyMCOM,
17  which is a developer tool and authoring environment for the creation of Flash based applications for
18  mobile handsets and other mobile electronic devices.

19       15.    Before Kiwi's innovation, Flash programmers who were developing applications to
20  run on mobile handsets lacked a commercially viable tool for running test applications under real
21  world conditions. To accomplish this, developers had to go through the inefficient and arduous
22  process of loading a test application from a computer into a specific handset, running the application
23  until it crashed and removing and modifying the application as needed until a successful application
24  was fully executed on the handset.

25       16.    The MyMCOM project provided a unique and valuable solution to this problem by
26  defining a set of developer tools that could simulate the performance characteristics of any mobile
27  handset on a personal computer, thereby avoiding the inefficient and arduous trial and error process
28  described above.

3

THINKVILLAGE-KIWI v. ADOBE SYSTEMS, INC.
DWT 11741523v1 0087744-000001                                                                                                   COMPLAINT

17. The MyMCOM project also defined a series of profilers that could identify handset performance characteristics during emulation, such as CPU cycles used or memory occupied during the runtime of an application.

18. MyMCOM was conceived and developed by Mr. Poulin and Kiwi as a unique technology proposition and investment proposal. At all times during his conception and development of MyMCOM, Mr. Poulin and Kiwi maintained the project in strict confidence.

19. In 2004, Mr. Poulin determined that he needed venture capital funding for further development of the MyMCOM project.

20. Athlone Ventures ("Athlone"), part of the Athlone Group of companies, is a leading venture capital and business consulting firm based in the United Kingdom. In 2004, Mr. Poulin approached Athlone seeking investors for the MyMCOM project. As a precondition to the disclosure of the MyMCOM project and related information to Athlone, Mr. Poulin, Kiwi and Athlone signed a non-disclosure agreement (the "Athlone NDA") on October 24, 2004.

21. As part of its analysis of the MyMCOM project, Athlone retained the consulting services of Sue Thexton ("Ms. Thexton"). Athlone introduced Ms. Thexton to Mr. Poulin and designated her as the Athlone contact through whom all communications on the MyMCOM project would pass.

22. Between October 2004 and January 2005, Athlone, Ms. Thexton and Mr. Poulin participated in numerous conference calls and did other work to assess the commercial potential of the MyMCOM project.

23. Before being retained by Athlone for the MyMCOM project evaluation, Ms. Thexton had spent ten years employed by Macromedia, most recently as its Vice President in charge of Macromedia Europe. Prior to joining Macromedia, Ms. Thexton was employed for six years as the General Manager for Adobe's Northern Europe operations.

24. At the time Ms. Thexton was retained and presented to Mr. Poulin, Athlone did not disclose Ms. Thexton's prior employment at Macromedia and Adobe to Mr. Poulin, nor did it disclose that Macromedia was a client of Athlone. In accordance with the Athlone NDA, Mr. Poulin confidentially disclosed details on the MyMCOM project to Athlone and Ms. Thexton without

4
THINKVILLAGE-KIWI v. ADOBE SYSTEMS, INC.
DWT 11741523v1 0087744-000001                                                    COMPLAINT

1 having been informed of any connection between Ms. Thexton and Macromedia or Adobe.

25. After receiving Mr. Poulin's technical description and business development plans for the MyMCOM project, Ms. Thexton discouraged Mr. Poulin from seeking venture capital funding from Athlone or any other funding source. Instead, Ms. Thexton proposed that Mr. Poulin allow her to contact Macromedia, her former employer, to determine whether it was interested in MyMCOM as a joint venture.

26. In January 2005, Ms. Thexton arranged for Mr. Poulin to contact Stephen Elop who, at the time, was Macromedia's COO. Mr. Poulin, Kiwi and Macromedia promptly entered into a nondisclosure agreement (the "Macromedia NDA") and, in accordance with this agreement, Mr. Poulin confidentially disclosed valuable and unique trade secrets and proprietary rights, including technical and business development details and plans for the MyMCOM project, to Macromedia for the sole and limited purpose of permitting Macromedia to evaluate this information.

27. On April 18, 2005, Adobe and Macromedia announced that Adobe would acquire Macromedia, stating that "[t]ogether, the two companies will meet a wider set of customer needs and have a significantly greater opportunity to grow into new markets, particularly in the mobile and enterprise segments."

28. In June 2005, in connection with the Macromedia NDA, Mr. Poulin confidentially provided written descriptions of the MyMCOM project directly to Mr. Elop, who by that time had been named CEO of Macromedia. These descriptions contained unique and valuable trade secrets and proprietary rights for the MyMCOM project.

29. Plaintiff is informed and believes that Macromedia had not conceived or developed viable Flash Lite developer tools or authoring platforms for the mobile handset environment before Mr. Poulin and Kiwi confidentially disclosed information on the MyMCOM project to Macromedia under the Macromedia NDA. And Macromedia was not independently developing such tools or authoring platforms at the time Mr. Poulin and Kiwi made the confidential disclosures to Macromedia.

30. Before Macromedia was acquired and merged into Adobe, Macromedia held an annual conference, called the MAX Conference, for the purpose of bringing together designers,

developers, partners and executives for an exchange of ideas relating to, among other technologies, Flash and Flash Lite applications. Adobe now holds this conference. In October 2005, approximately one week before Macromedia's MAX Conference, Mr. Poulin participated in a confidential conference call with Macromedia's Mobile and Device Team. The purpose of the call was to discuss additional technical aspects of the MyMCOM project. However, during the call Macromedia informed Mr. Poulin for the first time that Macromedia no longer had any interest in the MyMCOM project and would be announcing its own new developer tool and authoring platform at the upcoming MAX Conference.

31. Macromedia never returned to Mr. Poulin or Kiwi the confidential information provided by them under the Macromedia NDA

32. On October 17, 2005 at the MAX Conference in Anaheim, California, Macromedia publicly announced that it had created a mobile handset emulator that could simulate the operation of Flash Lite applications and monitor performance characteristics such as CPU cycles used or memory occupied during the runtime of an application.

33. Plaintiff is informed and believes that in connection with this public announcement and the emulator described in therein, Macromedia used, misappropriated and disclosed the unique and valuable trade secrets and other proprietary rights conceived, developed and provided by Mr. Poulin and Kiwi to its benefit, without authorization and in violation of the Macromedia NDA.

34. The announcement, made by Macromedia's Bill Perry, included the display of a mock up screen shot of the new emulator that incorporated confidential materials, including unique and valuable trade secrets and other proprietary rights, provided by Mr. Poulin and Kiwi to Macromedia in strict confidence under the NDA.

35. Adobe completed its acquisition of Macromedia on December 3, 2005. Publicly available documents state that Adobe paid $3.4 billion for this acquisition. This transaction took place after Macromedia had acquired access to Kiwi's unique and valuable trade secrets and other proprietary rights and used and disclosed them to Adobe and others, without authorization.

36. In connection with Adobe's acquisition of Macromedia, Defendants succeeded to and assumed all the rights, liabilities and obligations of Macromedia under the Macromedia NDA.

THINKVILLAGE-KIWI v. ADOBE SYSTEMS, INC.
DWT 11741523v1 0087744-000001                                                                    COMPLAINT

37. At the time of Adobe's acquisition of Macromedia, many Macromedia employees became employees of Adobe, including Bill Perry and Stephen Elop.

38. On December 15, 2005 at the Adobe World Breeze Conference, Bill Perry, by that time an employee of Adobe, was questioned about the October 17, 2005 announcement of a new Macromedia emulator and authoring platform. Mr. Perry stated that the mock up screen shot and other descriptions were not of a product that had been, or was currently, in development by Macromedia or Adobe, but instead was a future vision of what could be offered to the mobile developer community.

39. In March 2007, Defendants launched Device Central as part of Adobe Creative Suite 3.

40. Defendants also sell Device Central as part of several other Adobe products such as Photoshop CS3, Illustrator CS3, Flash CS3 Professional, Dreamweaver CS3, After Effects CS3, and Premiere Pro CS3.

41. Device Central uses, incorporates and misappropriates Kiwi's MyMCOM technology, including unique and valuable trade secrets and other proprietary rights, which was disclosed in confidence to Macromedia.

42. Device Central is an innovative and valuable product because of Kiwi's unique and valuable trade secrets and other proprietary rights that were disclosed in confidence to Macromedia and then implemented into Device Central without authorization. Developers purchase and use Device Central, including Kiwi's unique and valuable trade secrets that were implemented into the product without authorization, to create applications that run on Flash Lite. Defendants have also been able to "cross sell" Device Central in numerous other products. For example, Device Central, including Kiwi's unique and valuable trade secrets, was integrated into the software titles that make up Defendants' popular Creative Suite 3 ("CS3").

43. Defendants have emphasized the significance of Kiwi's unique and valuable trade secrets in their marketing literature for CS3. For example, Adobe has stated that: "Adobe Device Central CS3 empowers designers to cut through the complexity of a fragmented mobile landscape and create engaging, optimized content dramatically faster than before." Adobe has also stated that:

7

1  "For the first time, creative professionals are able to preview their work and test mobile content
2  instantly within familiar authoring environments through a periodically updated library of detailed
3  phone and device profiles. With tight integration across the Adobe Creative Suite 3 family, Adobe
4  Device Central CS3 dramatically simplifies the mobile authoring process."

5  44.  Accordingly, Defendants have benefitted, and continue to benefit from their
6  misappropriation and unauthorized use of Kiwi's unique and valuable trade secrets and other
7  proprietary rights.

8  45.  Device Central and CS3 have been enormously successful, principally because of the
9  implementation of Kiwi's unique and valuable trade secrets and proprietary rights that were
10 disclosed in confidence to Macromedia and then implemented into Device Central without
11 authorization.

12 46.  Neither Kiwi nor Mr. Poulin was compensated by Defendants for the unauthorized
13 use of the MyMCOM technology, including unique and valuable confidential trade secrets and other
14 proprietary rights, that was disclosed to Defendants in confidence.

**FIRST CLAIM FOR RELIEF**
**MISAPPROPRIATION OF TRADE SECRETS**

17 47.  Plaintiff repeats the allegations of paragraphs 1-46 as if fully set forth herein.

18 48.  The above described activities by Macromedia and Adobe constitute the
19 misappropriation of trade secrets consisting of at least unique design features, functional features,
20 technological research, business plans, marketing plans and marketing research, which trade secrets
21 were confidentially disclosed to Macromedia by Mr. Poulin and Kiwi between January 2005 and
22 October 2005 as set forth above. Specifically, beginning in January 2005 and continuing through
23 October 2005, Mr. Poulin and Kiwi disclosed to employees and agents of Macromedia, including at
24 least Macromedia's mobile device team, its corporate development department, and its COO/CEO,
25 unique and valuable technical and commercial plans for Flash Lite developer tools and authoring
26 environments that dramatically simplified the ability of mobile content developers and authors to
27 preview, test and optimize creative content for Flash Lite supported mobile devices.

28 49.  The MyMCOM technology was unique and valuable business and technical

information conceived and developed by Mr. Poulin and Kiwi that was not generally known to the public, was securely maintained as confidential information and was disclosed to Macromedia under an obligation of confidentiality pursuant to the Macromedia NDA.

50. Without permission or authority, Macromedia disclosed certain confidential MyMCOM information to the public at the October 17, 2005 Anaheim MAX Conference.

51. At least during negotiations relating to the Adobe-Macromedia merger, and after the merger in December 3, 2005, Macromedia and Adobe knew or had reason to know that Kiwi had disclosed the MyMCOM information to Macromedia in confidence, and that the information constituted unique and valuable trade secrets and proprietary rights, yet Macromedia and Adobe used and disclosed that information to their benefit during negotiations for the merger and after the merger, without permission or authority.

52. Without permission or authority, Defendants have used the confidential MyMCOM technology and business plans in the design, development, marketing, launch and sale of products that contain Device Central.

53. Defendants have profited enormously from sales of their commercial products that incorporate Device Central, and have not shared any of the proceeds of those sales with Mr. Poulin or Kiwi.

54. In February 2008, Defendants announced that a "premium" version of Device Central would be launched later in 2008.

55. TVK believes that Defendants intend to develop further commercial products based on the unique and valuable Kiwi trade secrets and other proprietary rights which have been misappropriated by Defendants.

56. TVK has been damaged by Defendants' past and ongoing misappropriation of trade secrets as set forth above, and is entitled to recover its actual loss and for the total unjust enrichment of Defendants in accordance with Cal. Civ. Code § 3426.3(a). Because Defendants' misappropriation of Kiwi's trade secrets was willful and malicious, TVK is entitled to recover its attorneys' fees plus exemplary damages twice the amount awarded in accordance with Cal. Civ. Code § 3426.3(a).

1    57.   In addition, due to the continued release by Defendants of new products that
2  unlawfully incorporate the unique and valuable Kiwi trade secrets, TVK is entitled to a permanent
3  injunction prohibiting the future misappropriation of its trade secrets.

## SECOND CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION

58.   TVK repeats the allegations of paragraphs 1-57 as if fully set forth herein.

59.   The acts of Defendants complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.   Defendants' conduct has caused, is causing and is likely to continue to cause substantial and irreparable injury to TVK. TVK is entitled to injunctive relief, and to recover its damages, Defendants' profits, all trebled, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## THIRD CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER STATE LAW

61.   TVK repeats the allegations of paragraphs 1-60 as if fully set forth herein.

62.   The acts of Defendants complained of herein constitute unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* and the common law of California, in that the activities complained of are unlawful, unfair, and fraudulent business practices.

63.   Defendants' conduct has caused, is causing, and will continue to cause irreparable injury to TVK and TVK is entitled to injunctive relief, and are entitled to restitution of the money lost by it and gained by Defendants as a result of Defendants' acts of unfair competition.

## FOURTH CLAIM FOR RELIEF
## BREACH OF CONTRACT UNDER STATE LAW

64.   TVK repeats the allegations of paragraphs 1-63 as if fully set forth herein.

65.   Defendants' past and ongoing disclosures and uses of the valuable and unique trade secrets and other proprietary rights for the MyMCOM project disclosed by Mr. Poulin and Kiwi under the Macromedia NDA constitute willful breaches of the Macromedia NDA.

66.   Defendants' breach of the Macromedia NDA has damaged TVK in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY UNDER STATE LAW

67. TVK repeats the allegations of paragraphs 1-66 as if fully set forth herein.

68. From October 2004 through at least June 2005, Macromedia – initially through Ms. Thexton, and subsequently in its direct dealings with Mr. Poulin – falsely led Mr. Poulin and Kiwi to believe that it was working with them to jointly develop a commercial embodiment of the MyMCOM project.

69. As the result of Macromedia's conduct and statements, Mr. Poulin and Kiwi reposed confidence in the integrity of Macromedia, and Macromedia accepted their confidence and trust.

70. As a result of that relationship, Macromedia owed fiduciary duties to Mr. Poulin and Kiwi.

71. Macromedia breached its fiduciary duties to Mr. Poulin and Kiwi by, among other things:

   a. obtaining confidential, unique and valuable information from Mr. Poulin and Kiwi for the purpose of using that information to independently launch a commercial product for which Mr. Poulin and Kiwi received no compensation;

   b. using and benefitting from Mr. Poulin's and Kiwi's confidential, unique and valuable information without permission or authorization in connection with its merger into and with Adobe for which Kiwi received no compensation; and

   c. using and benefitting from Mr. Poulin's and Kiwi's confidential, unique and valuable information without permission or authorization in the Device Central product and in ongoing product development activities for which Mr. Poulin and Kiwi received no compensation.

72. Defendants' breach of its fiduciary duties has damaged TVK in an amount to be proven at trial. In addition, Defendants have acted maliciously and fraudulently and with an intent to oppress TVK and an award of exemplary damages is appropriate.

WHEREFORE, TVK prays for judgment against Defendants and their parent corporations, subsidiaries and affiliates as follows:

1. An award of monetary damages for unlawful misappropriation of TVK's unique and valuable trade secrets including, without limitation, the total amount by which Defendants have been unjustly enriched;

2. A permanent injunction against further unlawful misappropriation of TVK's unique and valuable trade secrets;

3. An award of monetary damages, including Defendants' profits, all trebled, costs and attorneys' fees for violation of the Lanham Act, under 15 U.S.C. §§ 1116 and 1117;

4. An award of monetary damages, including money lost by TVK and gained by Defendants as a result of Defendants' acts of unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* and the common law of California;

5. An award of monetary damages for breach of the Macromedia NDA;

6. An award of monetary damages for breach of fiduciary duties owed to TVK;

7. An award of exemplary damages for breach of fiduciary duties owed to TVK;

8. An award of TVK's costs of suit and attorneys' fees incurred herein; and

9. For such other, further or different relief as this Court may deem proper and just.

Dated: September 1, 2008.

NIRO, SCAVONE, HALLER & NIRO

DAVIS WRIGHT TREMAINE

By: _____
Martin L. Fineman
Attorneys for Plaintiff
ThinkVillage, LLC

## JURY DEMAND

TVK demands a trial by jury of all issues so triable.

Dated: September 1, 2008.

NIRO, SCAVONE, HALLER & NIRO

DAVIS WRIGHT TREMAINE

BY: _____
Martin L. Fineman
Attorneys for Plaintiff
ThinkVillage, LLC

THINKVILLAGE-KIWI v. ADOBE SYSTEMS, INC.
DWT 11741523v1 0087744-000001                                                                                    COMPLAINT