MARTIN L. FINEMAN, California State Bar No. 104413
DAVIS WRIGHT TREMAINE LLP
505 Montgomery St., Suite 800
San Francisco, California 94111-6533
Phone: (415) 276-6500
Fax: (415) 276-6599
E-mail: martinfineman@dwt.com

DAVID J. SHEIKH *(Pro Hac Vice)*
GREGORY P. CASIMER *(Pro Hac Vice)*
DAVID J. MAHALEK *(Pro Hac Vice)*
LAURA A. KENNEALLY (*Pro Hac Vice)*
JOSEPH A. CULIG *(Pro Hac Vice)*
NIRO, SCAVONE, HALLER & NIRO
181 W. Madison St., Suite 4600
Chicago, Illinois  60602
Phone: (312) 236-0733
Fax: (312) 236-3137
E-mail: sheikh@nshn.com
E-mail: casimer@nshn.com
E-mail: mahalek@nshn.com
E-mail: kenneally@nshn.com
E-mail: jculig@nshn.com

***Attorneys for Plaintiff* ThinkVillage-Kiwi, LLC**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| THINKVILLAGE-KIWI, LLC, | ) Case No. CV 08-4166 SI |
| | ) |
| Plaintiff, | ) **DECLARATION OF DONAVAN** |
| | ) **POULIN IN SUPPORT OF** |
| v. | ) **PLAINTIFF'S RESPONSE TO** |
| | ) **DEFENDANTS' MOTION FOR** |
| ADOBE SYSTEMS, INC, and | ) **SUMMARY JUDGMENT** |
| ADOBE MACROMEDIA | ) |
| SOFTWARE LLC, | ) Date:   October 30, 2009 |
| | ) Time:  9:00 a.m. |
| Defendants. | ) Courtroom 10, 19th Floor |
| | ) The Honorable Susan Illston |
| | ) |

I, Donavan Poulin, declare and state as follows:

1.      I am above the age of 18 and have personal knowledge of the facts and events set

1    forth in this declaration. If called as a witness at trial, I could competently provide testimony on
2    the matters set forth herein.

3    2.      I am the owner of Kiwi International, Ltd., a UK business entity that, in 2005 was
4    developing and promoting a set of developer tools generally referred to as myMCOM.

5    3.      Through the venture capital firm, Athlone Ventures and its Entrepreneur-in –
6    Residence, Sue Thexton, I was introduced to Macromedia as a potential business partner for the
7    myMCOM technology.

8    4.      In January, 2005 I engaged in negotiations with two corporate development
9    personnel and an in-house attorney for Macromedia over the specific terms of a non-disclosure
10   agreement ("NDA") that would protect the disclosure of my company's myMCOM technology
11   while it was being evaluated by Macromedia.

12   5.      At the outset of the negotiations, I was asked by Macromedia whether any
13   attorney was assisting me with the negotiation of the NDA. I told them no. In turn, Macromedia
14   negotiated directly with me in regards to the NDA. I was not advised at any time that I should
15   consider obtaining the assistance of an attorney in the negotiation.

16   6.      The NDA was completed and signed on January 31, 2005. The final version
17   includes (as I have subsequently been informed) what is known as a "residuals" clause. The
18   inclusion of the residuals clause in the NDA was done at the insistence of Macromedia's counsel
19   and without any explanation from them as to its legal significance or effect.

20   7.      I do not have a legal background and did not understand precisely what
21   Macromedia was getting from the inclusion of the residuals clause in the NDA.

22   8.      On October 21, 2005 I met with Gary Kovacs at Macromedia's head office in San
23   Francisco. The meeting had been arranged by Stephen Elop. The purpose of the meeting was to
24   discuss the myMCOM technology within the context of certain disclosures that were made by
25   Macromedia shortly before and during the 2005 MAX Conference, including a disclosure made
26   by Mr. Kovacs during his presentation to the Conference.

27   9.      In the course of describing several features of the myMCOM technology and

28

1   comparing them to Mr. Kovacs disclosures at the MAX Conference, I asked Mr. Kovacs whether

2   he had received a copy of the myMCOM document that I provided to Macromedia's CEO,

3   Stephen Elop under the protection of the NDA described above. Mr. Kovacs informed me that he

4   had received a copy of the document.

5       10.     I understood from Mr. Kovacs' answer to my question and our further

6   conversation during that meeting that Mr. Kovacs had reviewed and understood in detail the

7   content of the myMCOM document.

8       11.     However, Mr. Kovacs informed me that he was unaware that the myMCOM

9   document was protected by any NDA.

10      12.     My meeting with Mr. Kovacs ended badly, including a warning from Mr. Kovacs

11  that he had disparaged me, my company and myMCOM to the mobile developer community and

12  to NOKIA in particular.

13      13.     After leaving the meeting with Mr. Kovacs, I contacted my business advisor, Dr.

14  Thomas Stevenson, and informed him of the comments made by Mr. Kovacs. With Dr.

15  Stevenson's assistance a meeting was arranged with NOKIA during which I presented some

16  related business ideas in which NOKIA had previously expressed interest.

17      14.     After the conclusion of our meeting on November 16, 2005, NOKIA asked me

18  about the nature of any intellectual property rights I held in any of the technology related to our

19  meeting.

20      15.     Subsequently, I asked Dr. Stevenson to make a follow-up inquiry about my status

21  with NOKIA. Eventually, Dr. Stephenson informed me that he had discussed the substance of

22  the November 16 meeting with NOKIA. I was told that NOKIA had asked Macromedia about its

23  intellectual property rights in this area of technology after the question had been put to me. I

24  understood from Dr. Stevenson that Macromedia's answer was to produce the myMCOM

25  document to NOKIA and pass it off as Macromedia's own intellectual property.

26      16.     From my discussion with Dr. Stevenson, I understood that NOKIA now viewed

27  me as dishonest and lacking in any claim, whether intellectual or legal, to the myMCOM

28

THINKVILLAGE-KIWI v. ADOBE SYSTEMS, INC.
Case No. CV-08-4166 SI

DECLARATION OF DONAVAN POULIN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1   technology – which they had been convinced had been created by Macromedia.

2       17.     I found on the Internet a picture taken during Macromedia's Sneak Peeks

3   presentation at the 2005 MAX Conference. The picture shows a user interface for a developer

4   tool that is remarkably similar to the one I included in the myMCOM document I provided to

5   Macromedia a few months earlier.

6       18.     I am convinced that the source of this presentation graphic came from the

7   myMCOM document Macromedia received from me because of the features the two images

8   have in common.

9       19.     User Interface design is an exercise in making choices from dozens if not

10  hundreds of available alternatives for presenting certain information. In the case of the Sneak

11  Peeks image and the myMCOM image, the number of times the designer chose the identical

12  option from the many possibilities forecloses the possibility that they were independently

13  generated.

14      20.     I have seen and used Adobe Device Central and am familiar with its feature set,

15  particularly with respect to mobile emulation and device profiles. I am convinced that many of

16  the key features of Device Central were derived from information I presented to Macromedia in

17  June 2005 through the myMCOM disclosure.

18      21.     There are too many common features between the myMCOM disclosure and

19  Device Central to conclude that it is merely a coincidence. The emulation features are the same,

20  the profiling features are the same, the user interface features are the same, and the ability to

21  update handset data is the same.

22      I declare under penalty of perjury under the laws of the United States of America that the

23  foregoing is true and correct.

24

25

26  EXECUTED ON: October 10th, 2009

27  BY: DONAVAN PAUL POULIN

28