IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THINK VILLAGE-KIWI, LLC, | No. C 08-04166 SI |
|     Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
|    v. | |
| ADOBE SYSTEMS, INC., et al., | |
|     Defendants. | |

On October 30, 2009, the Court heard oral argument on defendants' motion for summary judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court DENIES defendants' motion.

**BACKGROUND**

This dispute centers around the development of software that enables designers to create applications that will run on mobile devices, such as cell phones, without having to test the applications on the devices. In 2005, when the events underlying this suit took place, Macromedia, Inc. was a software company offering tools for building various programs. One was Flash, software which allows the playing of video content on computers. Macromedia also offered FlashLite, which permits multimedia applications to run on mobile phones. According to defendants, Macromedia had begun work in 2004 on its "Jingle" project, which defendants describe as "an emulator that would help Flash designers create applications to work on various mobile devices without having to test their applications on an actual device." Mayhew Decl. ¶ 3; Mot. for Summ. Judg. at 2.

Around the same time, Donavan Poulin, the founder and principal of Kiwi International Ltd.

("Kiwi"), had begun to write applications for mobile devices in Flash. Poulin Depo. at 261:1-15. Poulin created a working proposal for myMCOM, which he described as a "developer tool" and "authoring environment" for creating applications to run on FlashLite. *See* myMCOM Executive Summary ("Summary"), ex. 4 to Verkuil Decl. Poulin engaged a consulting firm to help him find investors to develop myMCOM, and was referred to a Macromedia executive, Stephen Elop. Poulin Decl. ¶ 3; Poulin Depo. at 16:23-17:1.

On January 27, 2005, Poulin, Kiwi, and Macromedia entered into a non-disclosure agreement ("NDA"). *See* NDA, ex. A to Verkuil Decl. The agreement provided that the parties were "engaged in discussion in contemplation of a business relationship" and set forth terms for the protection of any confidential information disclosed as part of that relationship. *Id*. On June 10, 2005, Poulin sent an email to Elop that was intended to secure Macromedia as an investor. The email contained a brochure entitled "myMCOM Executive Summary" that described the myMCOM product, which was still in its conceptual stages. *See* Summary. The brochure stated that the product would allow developers to work with a software emulation of the mobile device for which an application was being designed, so that a developer could see how the application would run on the device, how much memory it would use while doing so, and how the device's CPU would perform while the application was running. The brochure also stated that information about specific mobile devices would be made available over the internet on an ongoing basis, as new mobile devices were introduced. *Id.*

After the parties' subsequent correspondence made clear that Poulin had not yet developed an actual product, but was still in the conceptual design stage, Elop informed Poulin that Macromedia had decided to "pass" on the initial round of investment in myMCOM. *See* June 16, 2005 Email, ex. 5 to Verkuil Decl. Macromedia announced on October 17, 2005 that it had created a new device (later named Device Central) to permit development of FlashLite applications on a desktop computer, and monitor the performance characteristics of the mobile device on which the application would run. This announcement was made during a "Sneak Peeks" presentation at a yearly conference, the MAX Conference, which is geared toward developers of Flash content. Mayhew Depo. at 42:6-8. The Sneak Peeks presentation included a mock-up of the emulator Adobe had developed. *Id.* at 49:13-17.

Subsequently, plaintiff ThinkVillage-Kiwi ("TVK"), to which Kiwi assigned its claims, filed

2

suit against defendants Adobe Systems, Inc. and Adobe Macromedia Software LLC (collectively, "Adobe"),[1] alleging misappropriation of trade secrets, unfair competition, breach of contract, and breach of fiduciary duty. Presently before the Court is Adobe's motion for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

After the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th

---

[1] In 2005, Macromedia was acquired by and merged into Adobe to form Adobe Macromedia Software LLC. The Court will hereinafter refer to Macromedia as "Adobe" to avoid confusion.

Cir. 1979).

## DISCUSSION

### I. Misappropriation of Trade Secrets

TVK's first cause of action, for misappropriation of trade secrets under California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*, requires proof of "[d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Cal. Civ. Code § 3426.1(b).[2] TVK's misappropriation claim centers around Adobe's alleged use of the information in the myMCOM Executive Summary ("Summary") in developing Device Central. In its summary judgment motion, Adobe asserts that it is entitled to judgment as a matter of law on the misappropriation claim because none of the information in the Summary was used in developing Device Central, or, even if any information was used, such use was authorized by the terms of the parties' NDA. The Court will address each contention in turn.

### A. Use of myMCOM in developing Device Central

Adobe urges the Court to determine as a matter of law that no misappropriation occurred, emphasizing that the idea to develop a mobile device emulator "did not appear in Macromedia's corporate consciousness in June 2005 courtesy of Kiwi." Contrary to Adobe's assertion, however, the

---

[2] The statute defines a "trade secret" as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 3426.1(d). Adobe's motion does not address whether the information in the Brochure constitutes a trade secret within the meaning of the statute; Adobe maintains that the Court need not reach that issue because there is no evidence Adobe made use of any confidential information, whether or not it amounted to a trade secret.

4

question presented to the Court is not whether myMCOM provided the initial inspiration for Device Central, as there is no dispute that, prior to the transmission of the Summary to Adobe, Adobe was already working on the Jingle project. Rather, the real issue is whether TVK has presented sufficient evidence to permit a jury to reasonably infer that Adobe used any of the information or ideas contained in the Summary in developing Device Central.

TVK need not show that the description of myMCOM, as contained in the Summary, constituted the sole influence on Adobe's engineers. Rather, if there are disputes of fact as to whether information in the Summary had a substantial influence on Device Central's design, then summary judgment is inappropriate. *See Verigy US, Inc. v. Mayder*, No. 07-4330, 2008 WL 564634, at *7 (N.D. Cal. Feb. 29, 2008) (misappropriation extends to products or processes that are "substantially derived from the trade secret"); *see also Mangren Res. & Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 944 (7th Cir. 1996) ("[I]f trade secret law were not flexible enough to encompass modified or even new products that are substantially derived from the trade secret of another, the protections that law provides would be hollow indeed."). Moreover, TVK's evidence need not be direct, but may be circumstantial, as long as the evidentiary inferences to be drawn are "reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." *Joseph E. DiLoreto, Inc. v. O'Neill*, 1 Cal. Rptr. 2d 636, 643 (Cal. Ct. App. 1991).

### 1. Independent Development

As an initial matter, Adobe contends it has established as a matter of law that Device Central was developed without any reference to TVK's confidential information because the myMCOM Summary was never shown to any of the engineers who worked on Device Central. In support of this contention, Adobe submits declarations from three of its engineers, all of whom state, verbatim, that Adobe's development process "was not affected by any third party information, other than the normal input from customers who were solicited to understand their requirements." *See* Stoeckmann Decl. ¶ 5; Plichta Decl. ¶ 5; Mayhew Decl. ¶¶ 10-11. TVK, however, has presented evidence that Elop could not recall what he did with the email containing the Summary, and may have printed out copies before deleting it. *See* Elop Depo. at 136:6-137:7. TVK has also created a genuine issue of fact as to whether the email

was shown to another of Adobe's executives, Gary Kovacs. *See* Poulin Depo. at 132:17-134:1. There is no dispute that Kovacs did not know of the existence of the parties' NDA. *Id.* at 133:22-134:1; Kovacs Depo. at 106:13-17. The Court concludes that a jury could reasonably infer from this evidence that the Summary, or the information contained therein, was disseminated to employees of Adobe.

The Court turns next to the substance of the parties' contentions. Although both parties have gone to considerable effort to tie the features of Device Central to features present in myMCOM or in Jingle, it is the Court's view that comparing the specific features of the three programs is a fact-intensive task best left to the jury. The Court further emphasizes that the evidence in the record would permit a jury to conclude that the overall concept for Device Central was influenced by myMCOM. First, an Adobe engineer testified at his deposition that the "*real* development process [for Device Central] began in the beginning of January 2006." Stoeckmann Depo. at 151:17-18 (emphasis added). A jury could reasonably infer from this evidence that Adobe went back to the drawing board in January 2006, after it had seen the myMCOM Summary. Second, TVK has submitted evidence that when Device Central was first publicly introduced, Adobe executive Kovacs described the product using the phrase "Software Outside of the Box." Poulin Depo. at 110:11-15. This slogan is clearly displayed on the cover page of the myMCOM Summary, and on several other pages throughout the document. Summary at 1, 3, 6, 11. Although the factual dispute created by this evidence is admittedly thin, the Court concludes that, drawing all inferences in TVK's favor, a jury could infer from Adobe's use of TVK's unique catchphrase that Adobe used TVK's confidential information in developing Device Central.

### 2. Obviousness of Features

A plaintiff may not ground a misappropriation claim on matters that are common or obvious in the relevant industry. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (no claim for misappropriation where plaintiff seeks to protect "matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade") (citation omitted) (alteration in original); *Princess Cruises, Inc. v. Amrigon Enters., Inc.*, 51 Fed. Appx. 626, 628 (9th Cir. 2002) (misappropriation claim may not include "common or obvious concepts in the . . . industry"). Relying on this rule, Adobe seeks summary judgment on the ground that any features Device Central shares with

6

myMCOM are not evidence of misappropriation because all of these features were common or obvious in the software industry. The parties submitted virtually no evidence addressing the issue of obviousness. On this record, the Court concludes that disputed issues of fact remain as to whether the design ideas TVK seeks to protect were common or obvious in the industry during the relevant time period.

### B.    Use Authorized by Terms of NDA

Adobe makes the alternative argument that any use of the information contained in the Summary cannot amount to misappropriation because such use was authorized under the NDA. Paragraph 8 of the NDA, the so-called "residuals clause," permits Adobe employees to use the information contained in the Brochure, as long as they have not

> (a) intentionally memorized the Confidential Information so as to reduce it to an intangible form for the purpose of creating a residual or using the same; or (b) avoided its obligation to maintain the confidentiality of Confidential Information merely by having a person commit such information to memory so as to reduce it to an intangible form.

NDA at 2. The NDA defines "residuals" as including the "ideas, concepts, know-how or techniques" contained in the Summary. *Id.*

Adobe asserts that the Court should grant summary judgment in its favor because it has established as a matter of law that none of its directors or employees intentionally memorized the information contained in the Brochure, meaning that any use of that information was authorized under the agreement. In support of this contention, Adobe cites the aforementioned declarations of its three engineers. None of the declarations directly addresses the issue presented here; rather, all three merely include identical assertions that the development of Adobe's emulator "was not affected by any third party information, other than the normal input from customers who were solicited to understand their requirements." Stoeckmann Decl. ¶ 5; Plichta Decl. ¶ 5; Mayhew Decl. ¶ 10. These rather conclusory assertions do not directly address whether Adobe employees memorized any of the information in the myMCOM Summary. Moreover, TVK's only method of proving intentional memorization at trial would be to raise an inference that any denials of memorization are false. First, the drawing of such an inference raises questions regarding the credibility of Adobe's declarants, which the Court may not

7

consider at the summary judgment stage. Second, TVK has raised facts that would permit a reasonable jury to draw the inference that any denial of memorization is false, including evidence regarding the similarities between Device Central and myMCOM, as well as evidence that an Adobe executive used the "Software Outside of the Box" slogan in pitching Device Central.

Accordingly, the Court DENIES Adobe's motion for summary judgment with respect to the claim for misappropriation of trade secrets under CUTSA.

## II.     **Breach of Contract**

TVK alleges that Adobe breached the parties' NDA by making unauthorized use of the confidential information contained in the myMCOM summary. For the reasons stated in the previous section, the Court cannot determine as a matter of law whether any use of TVK's confidential information was authorized by the parties' agreement. Accordingly, the motion for summary judgment on TVK's breach of contract claim is DENIED.

## III.     **Unfair Competition under Federal and State Law**

As Adobe points out, TVK's claims for federal and state unfair competition[3] are grounded on its claim of misuse of confidential information. Having determined that disputed issues of fact preclude summary judgment on the misappropriation claim, the Court concludes that summary judgment would be inappropriate on the unfair competition claims as well.

Adobe also seeks summary judgment on TVK's state unfair competition claim on the ground the claim is preempted by the CUTSA. This Court has previously rejected Adobe's preemption arguments. The issue of whether the confidential information TVK seeks to protect constitutes a trade secret within the meaning of CUTSA is not presently before the Court. Without resolving that question, the Court cannot determine whether TVK's state law claim for unfair competition is preempted.

Accordingly, Adobe's motion for summary judgment on TVK's federal and state unfair competition claims is DENIED.

---

[3] These claims are made under the Lanham Act, 15 U.S.C. § 1125(a), and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

8

## IV. Breach of Fiduciary Duty

Adobe asserts that it is entitled to summary judgment on TVK's breach of fiduciary duty claim because TVK has failed to present any evidence of a fiduciary relationship, much less a breach of the duties arising from that relationship. Under California law, "Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 150 (Cal. 2008) (citation omitted). Factors relevant to determining whether a contract has resulted in the creation of a fiduciary relationship are: (1) whether the contract was between "two sophisticated parties of substantial bargaining power"; (2) whether the parties were represented by counsel during contract negotiations; (3) whether the contract specified that the parties' relationship is not of a type in which fiduciary obligations are imposed by law; (4) whether one party's reliance on the other is "so substantial as to give rise to equitable concerns"; and (5) whether the information exchanged by contract was secret. *Id.* at 152-53.

The Court finds that TVK has raised significant issues of fact with respect to the existence of a fiduciary relationship.[4] First, TVK has presented evidence that the negotiation of the NDA took place between Poulin, a young, self-taught software developer who had only recently finished his education, and two Adobe corporate development officers. Poulin Decl. ¶ 4; Poulin Depo. at 27:18-21, 261:1-15. Second, TVK has presented evidence that Poulin was not represented by counsel in negotiating the NDA, while Adobe was. Poulin Decl. ¶¶ 4-5; Poulin Depo. at 108:11-13. Third, the NDA itself does not specify that the parties intended to enter into a non-fiduciary relationship. Indeed, it is equivocal as to the nature of their relationship. NDA at 1 ("Kiwi and Macromedia are engaged in discussion in contemplation of a business relationship or in furtherance of a business relationship."). Fourth, TVK has submitted evidence at least suggesting that Poulin's reliance on Elop and Adobe was great; even after Elop informed Poulin that he did not wish to invest in myMCOM, Poulin asked Elop if he could

---

[4] As Adobe points out, TVK has admitted that Ms. Thexton, the consultant who initially made the connection between Kiwi and Macromedia, was not an agent of Macromedia. Poulin Depo. at 343:17-344:7. Accordingly, the Court's analysis pertains only to the relationship between the parties to this suit, without regard to Thexton.

9

continue to consult Elop for advice. *See* June 17, 2005 and June 22, 2005 Emails, ex. 18 to Culig Decl. (Poulin to Elop: "[C]an you consider a small . . . advisory role with myMCOM? . . . . As a young founder in a growing and crazy corporate America, I would welcome your insight and support." Elop: "I'm happy to get updates and provide advice where I can."). Finally, the very existence of the NDA strongly suggests all parties anticipated that the information exchanged would be secret. As described at length earlier in this order, TVK has also raised factual issues with respect to the issue of breach.

To the extent Adobe seeks summary judgment on the fiduciary duty claim on grounds of preemption by CUTSA, the Court reiterates that it cannot resolve the preemption issue as a matter of law without having had an opportunity to determine whether the confidential information TVK seeks to protect amounts to a trade secret. Accordingly, Adobe's motion for summary judgment on TVK's claim of breach of fiduciary duty is DENIED.

## V.     Common Law Misappropriation

Adobe seeks summary judgment on TVK's common law misappropriation claim on the ground it is preempted by the CUTSA. As stated previously, the viability of TVK's common law misappropriation claim cannot be determined at this stage of the proceedings. Adobe's motion for summary judgment on this claim is DENIED.

## VI.     TVK's Motion to Strike

TVK has moved to strike several documents attached to Adobe's reply in support of its summary judgment motion: Exhibits 1-3 to the Declaration of Jeffrey Danley, and the Supplemental Declaration of Jakub Plichta.

TVK moves to strike Exhibit 1 to the Danley Declaration, which consists of objections to the evidence submitted by TVK in support of its opposition, on the ground that listing evidentiary objections in a reply deprives the opposing party of an opportunity to respond. As all of Adobe's objections were either not well-taken or pertained to evidence not material to the Court's consideration of the motion for summary judgment, the Court DENIES Adobe's objections without prejudice to renewal, and DENIES TVK's motion to strike Exhibit 1.

TVK moves to strike Exhibit 2 to the Danley Declaration on the ground it constitutes attorney argument exceeding the 15-page limit for reply briefs set forth in Civil Local Rule 7-4(b). Exhibit 2 is a chart listing each fact cited by TVK in an attempt to defeat summary judgment, and providing defense counsel's argument as to why that fact does not amount to a material dispute. The Court agrees with TVK that defense counsel was required to include all argument within the text of the reply brief, and GRANTS the motion to strike Exhibit 2.

TVK moves to strike Exhibit 3 and the Supplemental Plichta Declaration on the ground they lack foundation; TVK also moves to strike the Plichta Declaration because it introduces new evidence – namely, evidence of a Nokia emulator being developed in 2005 – that was not produced in discovery. The Court disagrees with TVK that the exhibits lack foundation. Moreover, as Adobe points out, TVK itself raised the issue of the Nokia emulator in its opposition to Adobe's summary judgment motion. Accordingly, TVK's motion to strike Exhibit 3, as well as the Supplemental Plichta Declaration and its exhibits, is DENIED.

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court hereby DENIES Adobe's motion for summary judgment. (Docket No. 123). The Court GRANTS in part and DENIES in part TVK's motion to strike. (Docket No. 159).

**IT IS SO ORDERED.**

Dated: November 16, 2009

SUSAN ILLSTON
United States District Judge